IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL ACTION NO. 3:08-CV-00158

| | | |
|---|---|---|
| CAROLINA MATERIALS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CONTINENTAL CASUALTY** |
| v. | ) | **COMPANY'S BRIEF IN SUPPORT** |
| | ) | **OF ITS MOTION FOR PARTIAL** |
| CONTINENTAL CASUALTY | ) | **SUMMARY JUDGMENT REGARDING** |
| COMPANY d/b/a | ) | **BUSINESS LOSS CLAIMS AND** |
| CNA INSURANCE, | ) | **EXTRA-CONTRACTUAL CLAIMS** |
| | ) | |
| Defendant. | ) | |

Defendant Continental Casualty Company ("Continental") files this Brief in Support of its Motion for Partial Summary Judgment Regarding Business Loss Claims and Extra-Contractual Claims and respectfully shows as follows:

## I.    INTRODUCTION

On October 26, 2006, Carolina Materials, LLC ("Plaintiff") sustained damage to parts of an extruder machine while producing a polyethylene sheet with contaminated feedstock. Plaintiff submitted a claim with Continental, seeking to recover under its boiler and machinery insurance policy. Continental advanced $90,272 to Plaintiff towards repair of the property (based on initial repair estimates and

after applying a $25,000 deductible).[1]

Plaintiff filed this action against Continental on April 10, 2008, seeking a declaratory judgment that Continental is obligated to pay all losses incurred for the extruder equipment breakdown (including lost business income, a portion of continuing operating expenses incurred, and its cost to repair and/or replace damaged components), and alleging bad faith and unfair and deceptive trade practices.

On May 12, 2009, this Court entered an Order on Continental's Motion for Partial Summary Judgment regarding coverage for Business Income and Extra Expense loss under the Policy (Docket No. 31), holding that the Spare Equipment and Parts endorsement to the Policy was an exclusion, and was applicable to the barrel and screw of the extruder machine. Therefore, under the endorsement, there is no Business Income or Extra Expense coverage available for any loss resulting from damage to the barrel and screw. (Docket No. 39.) Since the Court's Order, Continental has attempted to gather the facts necessary to evaluate the Plaintiff's claim for Business Income and Extra Expense loss, but has met only resistance

---

[1] There is no requirement under the insurance contract to make any payments prior to repairs being made. (See, Docket 31, Exhibit B, CCC000013-14.)

— 2 —

from Plaintiff, as documented in the currently pending motions. (See Docket Nos. 52, 55, 56.)

In response to the Court's Scheduling Order, Plaintiff produced the Expert Report of Kirk Frohme, its accounting expert, in support of its claims for Business Income and Extra Expense Loss and for consequential damages. The deposition of Mr. Frohme was taken on Friday, November 6, 2009, and is attached as an exhibit to this Motion. Mr. Frohme's testimony demonstrates that Continental is entitled to summary judgment on Plaintiff's claim for Business Income and Extra Expense losses because Plaintiff's calculations are hypothetical and speculative forecasts. Continental also is entitled to summary judgment on Plaintiff's claim for consequential damages, because such damages are excluded under the contract, and were not within the reasonable contemplation of the parties at the time of contracting.

Because a threshold issue existed, and was the subject of a legitimate dispute between the parties until this Court construed a key contract provision in its May 12, 2009 Order, Plaintiff cannot establish the elements of its bad faith claim or unfair and deceptive trade practices claim as a matter of law. Additionally, because Plaintiff cannot

— 3 —

demonstrate an underlying tort or aggravating circumstances, Plaintiff is not entitled to punitive damages, statutory treble damages, or attorneys' fees.

## II.  STATEMENT OF FACTS

**Factual Background**

Continental insured Plaintiff under Boiler and Machinery insurance policy number R 2081401350 for the Policy Period of June 11, 2006 though June 1, 2007 (hereinafter, the "Policy").  Plaintiff alleges that a Nanjing Giant sheet extrusion machine was damaged on October 26, 2006, when raw materials allegedly contaminated with polyvinyl chloride ("PVC") were fed into the machine during production of a polyethylene sheet.  (Ex. A at 1, 3.)  The PVC decomposed when heated, producing corrosive by-products that damaged parts of the extruder machine, including the barrel and screw, the extruder die, and at least two of the cooling rolls.  (Ex. A at 1, 3; Ex. B at 2.)  Plaintiff submitted a Notice of Loss dated November 1, 2006.  (Ex. A at 1.)

Continental's Loss Control Department[2] inspected the

---

[2]  Continental's Loss Control Department is a department within Continental's underwriting division that inspects facilities and that may be requested to gather facts in connection with boiler and machinery claims.  Members of the Loss Control Department do not adjust claims and do not have claims authority.  Continental's adjusters monitor the work of the Loss Control Department and make claim determinations based on their factual findings.  Ex. D.

— 4 —

incident on November 15, 2006. (Ex. B at 1.) Continental's inspector initially estimated that repair and resurfacing of the cooling rolls would take approximately eight weeks at a cost of $12,000 per roll, and the repair of the extruder die would take twelve weeks at a cost under $50,000. (Ex. B at 3.) He also reported that the extruder screw (auger) could be cleaned, ground, and rechromed in a six to eight week period, at a cost of $15,000. (Ex. B at 3.) Additionally, he reported that the Plaintiff had received a quote from Xaloy company for receipt of a new screw and barrel set within six to eight weeks at a cost of $46,000, and that it was not economical to refurbish the original auger. (Ex. B at 3, 4.)

Continental's loss inspector returned on November 30, 2006, and reported that the insured had received two quotes: one to refurbish the original die with chrome plate in six to eight weeks at a cost of $47,272; the other estimate was for replacement of the die within twenty-two to twenty-four weeks at a cost of $124,648. (Ex. C at 4.) The inspector also states that Plaintiff reported a quote to rechrome the rolls in eight weeks at $18,000 each, while the inspector obtained a quote of $12,000 to $13,000 with completion in six to eight weeks. (Ex. C at 4.) Continental

— 5 —

paid Plaintiff a total of $90,272 as advances toward the repairs, based on the initial reports and estimates (Ex. D.)

In April 2007, an engineering firm, The Warren Group, inspected the machine and subsequently issued a report. (Docket No. 32, Ex. 2.)[3] The report concluded that all repairs to the machine could have been completed in a ten to twelve week time frame with a full shut down. (Docket No. 32, Ex. 2 at 9.) Alternatively, doing the repairs on a piecemeal basis, all repairs should have been able to have been accomplished in twenty-four weeks. (Docket No. 32, Ex. 2 at 10.) Finally, the report concluded (based on the estimates from several sources) that rebuilding and refurbishing the barrel and screw, extrusion die, and rolls, including freight and installation, could have been accomplished at an approximate cost of $113,100. (Docket No. 32, Ex. 2 at 11.)

**Plaintiff's Claim for Business Income and Extra Expense, and Consequential Damages**

By far the largest element of Plaintiff's damage claim in this action relates to alleged Business Income and Extra Expense loss and alleged consequential damages. As both

---

[3] From the Warren Group's report (previously filed by Plaintiff in this action), it appears that a new barrel and screw had been purchased and installed by the date of their inspection on April 23, 2007. (See, Docket 32, Exhibit 2.)

parties acknowledged in this Court's initial scheduling conference, the question of whether the Plaintiff had any coverage at all for Business Income and Extra Expense loss was a threshold issue to be determined by the Court's construction of the Spare Equipment and Parts endorsement. In its Order of May 12, 2009, this Court found that the endorsement should be interpreted as an exclusion and applied to the barrel and screw of the extruder machine. (Docket No. 39.) It is undisputed that Plaintiff did not have a spare barrel and screw on site as required by the terms of the endorsement. (Docket No. 31, Ex. C, Nos. 11–13.) It is undisputed that the extruder machine cannot operate without the barrel and screw. (Docket No. 55, Ex. A, p. 132:1–6.) Therefore, under the endorsement, there is no business income coverage available for any loss resulting from damage to the barrel and screw.

For the Plaintiff to establish a claim for Business Income and Extra Expense loss, the amount of lost income directly resulting from physical damage to the cooling rolls, if any, must be determined separately and independently from any lost production resulting from damage to other components of the extruder machine. That calculation has not been performed because the Plaintiff has yet to produce the daily

15918733.3

production records, records of product defects and reprocessing, customer records, and related documents that are necessary to make that determination.[4] Instead, Plaintiff has submitted an accounting report for its evidence of such damages – a report that cannot support Plaintiff's claim as a matter of law, for the reasons discussed below.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Blis Day Spa, LLC v. The Hartford Ins. Group*, 427 F.Supp.2d 621, 628 (W.D.N.C. 2006). A material fact is one that "might affect the outcome of the suit under governing law." *Westchester Fire Ins. Co. v. Johnson*, 221 F.Supp.2d 637, 642 (M.D.N.C. 2002). If the moving party shows the absence of a genuine issue as to any material fact, the non-moving party must assert facts showing that there is a genuine issue for trial. *Blis Day Spa*, 427 F.Supp.2d at 628. The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; the plaintiff must present evidence on which the fact-finder could reasonably

---

[4] To the contrary, as discussed in Continental's discovery motions, it appears that most of this evidence has been destroyed.

— 8 —

find for the plaintiff. *Central Carolina Bank & Trust Co. v. Security Life of Denver Ins. Co.*, 247 F.Supp.2d 791, 797 (W.D.N.C. 2003).

### IV. LEGAL ARGUMENT AND AUTHORITIES

**A. Plaintiff has no basis for its claim of Business Income and Extra Expense Loss or its claim for consequential damages.**

Continental moves the Court for summary judgment in its favor and against all of Plaintiff's claims for alleged Business Income or Extra Expense under the Policy, and against all claims of other business interruption or consequential damages.

Under North Carolina law, damages for "lost profits" cannot be based upon "hypothetical or speculative forecasts of losses." *Blis Day Spa,* 427 F.Supp.2d at 629 (citing *Iron Steamer, Ltd. V. Trinity Restaurant, Inc.* 110 N.C. App. 843, 847–48, 431 S.E.2d 767, 770 (1993); *Catoe v. Helms Contr. & Concrete Co.,* 91 N.C. App. 492, 496, 372 S.E.2d 331, 335 (1988)). Testimony simply providing an estimate of anticipated profits is not enough of a factual basis for the issue to reach a jury. *Id.*

With respect to consequential damages, such damages recoverable in an action for breach of contract are those that

— 9 —

"naturally flow from the breach, and such special or consequential damages as are reasonably presumed to have been within the contemplation of the parties at the time they made the contract, as the probable result of a breach of it." *Blis Day Spa,* 427 F.Supp.2d at 638 (citing *Johnson v. Railroad Co.,* 140 N.C. 574, 577, 53 S.E.362 (1906)). Whether special damages are within the contemplation of the parties depends on the information communicated to or the knowledge of the parties at the time and the reasonable foreseeability of such damages. *Id.*

In an action in which a policyholder seeks to recover consequential damages stemming from an insurer's alleged breach of an insurance policy, the Court shall consider "whether there existed a specific provision or language in the policy itself permitting recovery of consequential damages, the nature of the contract itself, or whether such circumstances or conditions as presume special damages were communicated to the defendant." *Id.*

The Policy at issue in this lawsuit expressly precludes recovery of consequential damages. The Policy provides as follows:

    **B.   Exclusions**
       We will not pay for loss or damage caused

— 10 —

directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

The exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

....

**14.** A delay in, or an interruption of any business manufacturing or processing activity except as provided by the Business Income and Extra Expense, Extra Expense Only and Utility Interruption Coverages.

....

**18.** Any indirect result of a "Breakdown" to "Covered Equipment" except as provided by the Business Income And Extra Expense ... Coverages.

(Docket No. 31, Ex. B at CCC 5-6.) Therefore, the Policy provides no specific provision or language that would lead the insured to understand that Continental would be liable for any consequential damages other than the specific coverages provided.

Additionally, there is no basis in the contract for finding an intent or contemplation at the time of contracting that would support the recovery of consequential damages. It is undisputed that the Policy provides a method for calculating Business Income and Extra Expenses loss. (Docket

— 11 —

No. 31, Ex. B at CCC 13.)   Losses calculated according to the formula provided by the Policy are the only business interruption damages that were within the contemplation of the parties.

Plaintiff has indicated in response to its interrogatories that its damages would be ascertained by its expert witness.   (Docket No. 55, Ex. D, No. 9.)   Plaintiff produced a report from its expert, Kirk Frohme, in accordance with the Court's Scheduling Order. (Ex. E.)   The report states that Plaintiff seeks to recover approximately $4.2 million for what Frohme referred to as "Excess losses" and approximately $5.5 million for what he refers to as "Consequential losses." (Ex. E.)   However, Mr. Frohme admitted in his deposition that none of his calculations were based on the specific coverage terms of the insurance contract or any specific calculations in the insurance policy.   (Ex. F at 51–52; 139 (Frohme's calculations were done "independent of any terminology or constraints within the insurance policy," and his "report was not geared towards quantifying amounts in accordance with any definitions in the insurance policy."))   To the contrary, Frohme's calculations were based on "pro forma" projections of future production and sales, that were given to him by

— 12 —

15918733.3

management, were not fact checked by him or subject to any due diligence, and were based on nothing more than anticipation and hope---literally. [5]

      As a matter of law and pursuant to Plaintiff's expert's own admissions, the approximately $4.2 million and approximately $5.5 million damage figures bear no relationship to the insurance contract. His calculations were not those set forth in the contract, nor were they within the contemplation of the parties at the time of contracting. Therefore, Continental moves for summary judgment in its favor and against Plaintiff's claims for Business Income and Extra Expense losses under the Policy, and against Plaintiff's claim for all consequential damages alleged. *See Blis Day Spa,* 427 F.Supp.2d at 637-639 (requiring lost profit damages to be proven with "reasonable certainty," and separately granting summary judgment against any consequential damages as beyond

---

[5] Q. Well, we have no evidence from any customers' contracts, or invoice history or anything to indicate that they had any expectation based on historical performance to achieve a million dollars a month in sales, is that correct?
A. Well, in doing the pro formas I would assume that one of the assumptions that was made was the fact that what customers are we hoping to have become even more significant customers when we get the 120 inch line operational. But in terms of any specifics that I'm aware of, the answer is no. But I believe that basis was an assumption they used in estimating these monthly revenue numbers.
Q. As you say, based on what they hoped they could do and business they hoped they could expand, both new customers and in the hope of expanding business from existing customers?
A. That's correct, both of those factors.
(Frohme Depo., Ex. F at 151-152.)

15918733.3

the contemplation of the parties as shown by the contract).

**B.    Plaintiff's bad faith claim fails because Continental did not recognize Plaintiff's claim as valid and then refuse to pay in bad faith, or engage in any aggravating or outrageous conduct.**

To recover for a claim of bad faith under North Carolina law, the Plaintiff must prove the insurer's recognition of a valid claim and a refusal to pay that claim. *Blis Day Spa*, 427 F.Supp. 2d at 631; *Lovell v. Nationwide Mutual Ins. Co.*, 108 N.C. App. 416, 420, 424 S.E.2d 181, 184 (1993); *see also Topsail Reef Homeowners' Ass'n v. Zurich Specialties London, Ltd.*, 11 Fed Appx. 225, 237 (4th Cir. 2001). The insurer must act with bad faith in refusal to pay the claim, where "bad faith" means a refusal "not based on honest disagreement or innocent mistake." *Lovell* at 421, 424 S.E.2d at 185 (*quoting Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 396, 331 S.E.2d 148, 155, *disc. rev. denied*, 314 N.C. 665, 336 S.E.2d 399 (1985)).

Moreover, an incorrect interpretation regarding insurance coverage will not alone constitute bad faith. *See e.g.*, *Olive v. Great American Ins. Co.*, 76 N.C. App. 180, 189, 333 S.E.2d 41, 46 (1985) (upholding a summary judgment on a bad faith claim where the insurer promptly and consistently denied a plaintiff's insurance claim based on an

— 14 —

interpretation that was neither strained nor fanciful, regardless of whether it was correct). Finally, the Plaintiff must establish that there was aggravating or outrageous conduct. *Blis Day Spa, LLC*, 427 F.Supp.2d at 631. Aggravated conduct includes fraud, malice, gross negligence, insult . . . willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard for the plaintiff's rights. *Id.*

This Court applied these elements in *Blis Day Spa, LLC v. The Hartford Ins. Group*. In *Bliss Day Spa,* this Court held that there was no evidence that The Hartford ever recognized the claim as valid, and that The Hartford's payment of a portion of the alleged business income loss did not indicate that it accepted Plaintiffs' methodology as to all losses. 477 F.Supp.2d at 632. The Court also held that Plaintiffs did not demonstrate The Hartford's refusal to pay the claim was not because of a legitimate, honest disagreement as to the validity of the claim or innocent mistake. *Id.* at 633. Finally, the Court found that the Plaintiffs did not identify any aggravating conduct. Evidence provided by the Plaintiffs only presented conclusions, but failed to provide specific evidence that the dispute was the product of a

— 15 —

grossly inadequate investigation or a willful intent to deceive. *Blis Day Spa, LLC*, 427 F.Supp.2d at 633-634.

In the instant lawsuit, Plaintiff has not alleged and the record does not establish any facts to indicate that Continental recognized a valid claim and refused to pay it in bad faith. The primary damages issue presented in this lawsuit is the Plaintiff's Business Income and Extra Expense loss claim and its consequential damages claim. Plaintiff's claim is limited, however, by the fact that there is no coverage provided for any loss resulting from the damage to the barrel and screw, requiring that portion of any lost production to be removed from any business loss calculation. Similarly, the Policy does not include any die as Covered Equipment, therefore (as is the subject of one part of Continental's Motion for Summary Judgment on Contract Interpretation), no Business Income claim can be based on losses resulting from damage to the die. If there were any recoverable claim for Business Income and Extra Expense, it has never been determined.[6] Therefore, even if coverage ultimately were found to exist under the Policy in excess of the amount paid by Continental, Plaintiff has not alleged and

---

[6] At this point, it may never be possible, given Plaintiff's failure to keep its own records that would allow the calculation to be made.

15918733.3

cannot prove any facts that would indicate Continental's denial of further payments amounted to anything more than an honest disagreement over interpretation of the coverage under the contract.

**C. Plaintiff's unfair and deceptive trade practices claim fails because Continental has not committed an unfair or deceptive act.**

In its complaint, Plaintiff alleged that Continental engaged in a number of practices prohibited by the Unfair and Deceptive Trade Practices Act. North Carolina General Statute §58-63-15(11) does not create a cause of action in favor of an individual, and the remedy for an alleged violation of the statute is the filing of an action under North Carolina General Statute §75-1.1. N.C. Gen. Stat. §58-63-15(11); *see also Lee v. Mut. Community Sav. Bank*, 136 N.C. App. 808, 811 n.2, 525 S.E.2d 854, 857, n.2 (2000).

To establish a violation of N.C. Gen. Stat. §75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the Plaintiff. *The Country Club of Johnston County, Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 243-244, 563 S.E.2d 269, 277 (2002)(citing *Gray v. N.C. Underwriting Ass'n*, 352 N.C. 61, 73 529 S.E.2d 676,

— 17 —

684 *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000)). A practice is deceptive if it has a tendency to deceive. *Gray*, 352 N.C. at 73, 529 S.E.2d at 684. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers. *The Country Club of Johnston County*, 150 N.C. App. at 243-244, 563 S.E.2d at 277. When an insurance company engages in conduct manifesting an inequitable assertion of power or position, including conduct which can be characterized as unethical, that conduct constitutes an unlawful trade practice. *Id*. The determination of whether an act or practice is an unfair or deceptive trade practice is a question of law for the court. *Gray*, 352 N.C. at 68, 529 S.E.2d at 681. Carolina Materials has not alleged and the record contains no proof of any such practice by Continental.

        **1.    Continental has not failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy.**

Plaintiff first reported the Extruder incident to Continental on November 1, 2006. Ex. A. Continental requested an investigation on November 3, 2006 and sent a Loss Control representative to the facility on November 15, 2006.

— 18 —

Ex. B. Continental did not fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy.

> **2. Continental has not failed to adopt and implement reasonable standards for the prompt investigation of claims arising under the Policy.**

Plaintiff has not asserted and the record contains no proof of any specific instances of Continental's alleged failure to adopt and implement reasonable standards. *See e.g.*, *Blis Day Spa, LLC*, 427 F.Supp.2d at 635 (denying plaintiffs' claim for failure to investigate where no specific failures or how the alleged failures damaged plaintiffs were identified).

> **3. Continental has not refused to pay claims without conducting a reasonable and prompt investigation based upon all available information.**

As discussed above, Continental promptly and reasonably investigated the claim and made advance payments based on estimates even though the contract does not require it to do so. With regard to the largest element of the claim, alleged Business Income and Extra Expense loss, Plaintiff has opposed Continental's efforts (following this Court's construction of a key endorsement) to develop a protocol to estimate the actual loss under the contract; Plaintiff also

— 19 —

has opposed all efforts to obtain the information necessary to perform the calculation. (See Docket No. 52 and related briefs.) Plaintiff has not asserted and the record contains no proof of any specific instances of failure to conduct a reasonable and prompt investigation. *See e.g.*, *Blis Day Spa, LLC*, 427 F.Supp.2d at 635 (denying plaintiffs' claim for failure to investigate where no specific failures or how the alleged failures damaged plaintiffs were identified).

> **4.  Continental has not failed to affirm or deny coverage of claims within a reasonable time after having received notification of the claim.**

Continental received notice of the claim on November 1, 2006, and immediately began its investigation. Ex. A. Continental made advance payments to the Plaintiff in December of 2006 and January 2007. Ex. D. Plaintiff never submitted final repair evidence for additional amounts it claimed as damages until after this suit was filed. As noted above, Plaintiff has never provided the production information and records necessary to calculate any Business Income and Extra Expense loss, if any, and has opposed such efforts by Continental subsequent to this Court's Order interpreting a key provision of the contract. Under the circumstances, Continental acted as best it could, given the fundamental and

15918733.3

open issue of contract interpretation and Plaintiff's refusal to provide documentation supporting its loss.

> **5. Continental has not failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.**

As articulated above, Continental promptly advanced funds sufficient to cover all claims in which liability was clear. The portions for which Plaintiff continues to seek payment are subject to a legitimate contract dispute or the amount of the alleged loss has not been established because Plaintiff has failed to produce the records. Continental has explained its position in detail. (Docket No. 52, Exs. 3-7.) *See e.g.*, *Blis Day Spa, LLC*, 427 F.Supp.2d at 635 (finding that where insurer had paid all undisputed amounts under the Policy and communicated to the insured the grounds for disagreement, the insurer had not failed to attempt good faith settlement of claims); *See also*, *Topsail Reef Homeowners Ass'n*, 11 Fed. Appx. at 234 (holding that where insurer had reasonable bases to challenge the validity of the insured's claim, the insured failed to demonstrate a material issue of fact as to whether the insurer complied with its obligations); *Central Carolina Bank & Trust Co.*, 247 F.Supp.2d at 801 (holding that insurer did not violate this provision of the

15918733.3

UDTPA because advocating a position that is ultimately determined to be incorrect does not necessarily demonstrate a lack of good faith in attempting to settle a claim). Therefore, as a matter of law, Plaintiff cannot show that Continental failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability had become reasonably clear.

      **6.    Continental has not attempted to settle the claim for less than the amount to which a reasonable man would have believed he was entitled.**

      Continental's payments to the Plaintiff have been limited by the terms of the Policy. Continental advanced funds towards repair and was never provided with evidence of actual repair of covered losses in excess of what was advanced. Continental has not attempted to settle the claim for less than the amount to which a reasonable man would have believed he was entitled under the terms of the contract, and the record contains no proof any specific instance of Continental having done so.

      **7.    Continental has not failed to make claim payments to insureds not accompanied by a statement setting forth the coverage under which the payments are being made.**

      Continental made certain advance payments (based on estimates) for physical damage to the Plaintiff prior to

— 22 —

repairs being made. Plaintiff's claims for Business Income and Extra Expense loss were the subject of legitimate dispute, which this Court answered as to a key endorsement in its May 12, 2009 Order.

Therefore, because the Plaintiff cannot establish any of the alleged violations, and the Plaintiff's allegations do not and cannot support a finding that Continental's actions were "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," summary judgment in favor of Continental is appropriate. *Blis Day Spa, LLC*, 427 F.Supp.2d at 634 (*quoting Gray*, 352 N.C. at 68, 529 S.E.2d at 681).

**D.  Plaintiff's claim for punitive damages, treble damages, and/or attorneys' fees fails.**

A tort may give rise to punitive damages if it is accompanied by an element of aggravation, like fraud, malice, gross negligence, insult, willful conduct, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless disregard of the plaintiffs' rights. *Blis Day Spa*, 427 F.Supp.2d at 636. Plaintiff would have to produce evidence that Continental determined that the claim was valid, but nevertheless refused to pay, and that such refusal was in bad faith with intent to further damage the

— 23 —

Plaintiff.  *Id*.  As discussed above, the record contains no proof of an identifiable tort or aggravating factors. Plaintiff also cannot establish that Continental determined that the claim was valid or refused to pay with intent to further damage the Plaintiff.  Plaintiff's entire claim for Business Income and Extra Expense loss was dependent on the application of the Spare Equipment and Parts endorsement. Since the Court's construction of that endorsement in May, Plaintiff has only obstructed Continental's efforts to establish a protocol to calculate whether any insured loss was sustained.  (See Docket No. 52.)

Similarly, no evidence exists that would establish a claim for deceptive trade practices, and Plaintiff is not entitled to treble damages.  Given that Plaintiff cannot establish bad faith or a deceptive trade practice, it is not entitled to attorneys' fees.  Therefore, Plaintiff's claim for punitive damages fails, and Continental is entitled to summary judgment on the issue of punitive damages, treble damages, and attorneys' fees.

### V.    CONCLUSION

Plaintiff's alleged problems are of its own making. Continental advanced funds sufficient to cover repair of

— 24 —

physically damaged items. The Plaintiff's entire claim for Business Income and Extra Expense loss required construction of certain Policy provisions. This Court answered a fundamental question of contract interpretation in May, but Plaintiff has obstructed further efforts to calculate whether any loss exists under the terms of the contract. The record does not support Plaintiff's claims for Business Income and Extra Expense loss, or for consequential damages. And regardless of the ultimate decisions reached on any damages claims, there is no basis for Plaintiff's extra-contractual claims.

Because the issues presented in this Motion are independent of any remaining issues in the case, Continental submits that there is no just reason for delay in the entry of final judgment in its favor on the issues presented herein. Therefore, Continental requests that the Court also make a finding, pursuant to Rule 54(b), Federal Rules of Civil Procedure, that there is no just reason for delay, and that the Court expressly enter final judgment in favor of Continental on the issues presented in this Motion.

Respectfully submitted, this 16th day of November, 2009.

15918733.3

Case 3:08-cv-00158-RJC -DSC   Document 59-1   Filed 11/16/09   Page 25 of 28

/s/ David M. Leonard

David M. Leonard
Georgia Bar No. 446625
Email: dleonard@carltonfields.com

/s/ Toni Ross Weir

Toni Ross Weir
Georgia Bar No. 612610
Email:  tweir@carltonfields.com

Carlton Fields P.A.
1201 West Peachtree Street NW
One Atlantic Center, Suite 3000
Atlanta, Georgia 30309-3455
Office:   404.815.3400
Facsimile: 404.815.3415


Robert M. Rubin, Esq.
North Carolina Bar No. 22301
Email: rrubin@cshlaw.com

Cranfill Sumner & Hartzog LLP
Post Office Box 30787
Charlotte, North Carolina 28230
Office:   704.332.8300
Facsimile: 704.332.9994

*ATTORNEYS FOR DEFENDANT*
*CONTINENTAL CASUALTY COMPANY*

— 26 —

15918733.3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**CIVIL ACTION NO. 3:08-CV-00158**

| | |
|---|---|
| CAROLINA MATERIALS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CONTINENTAL CASUALTY | ) |
| COMPANY d/b/a | ) |
| CNA INSURANCE, | ) |
| | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November, 2009, I electronically filed this **CONTINENTAL CASUALTY COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING BUSINESS LOSS CLAIMS AND EXTRA-CONTRACTUAL CLAIMS** by using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

>Eric Lee
>lee@leeamlaw.com
>Lee & Amtzis, P.L.
>5550 Glades Road, Suite 401
>Boca Raton, Florida 33431

>Michael L. Carpenter
>mcarpenter@gastonlegal.com
>Gray, Layton, Kersh, Solomon,
>  Furr & Smith, P.A.
>516 South New Hope Road
>Gastonia, North Carolina 28053

15918733.3

November 16, 2009.

/s/ Toni Ross Weir
Toni Ross Weir
Georgia Bar No. 612610
Email: tweir@carltonfields.com

Carlton Fields P.A.
1201 West Peachtree Street NW
One Atlantic Center, Suite 3000
Atlanta, Georgia 30309-3455
Office:    404.815.3380
Facsimile:  404.815.3415